```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05 CR 42 HEA |
| ) | DDN |
| PATRICK BELK, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

    This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 21, 2005. Both parties filed post-hearing memoranda.

    Defendant Patrick Belk has moved to suppress evidence and statements (Docs. 15, 32). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

    1.    In July 2004, St. Louis Metropolitan Police Detective Leo Rice[1] received information from a confidential informant (CI) that a black male named "Pat" who resided at 1007 Selby Lane, St. Louis, Missouri, possessed an AK-47 rifle and another weapon. Det. Rice had known the CI for approximately 10 years, and the CI had proven reliable in the past.[2]

    2.    After receiving the CI's information Det. Rice made a computer inquiry and learned that Patrick Belk, who had previously been convicted

---

[1] In July 2004, Det. Rice was assigned to the Most Violent Offenders police program. As of April 2005, Det. Rice had been a St. Louis police officer for approximately 14.5 years.

[2] Det. Rice testified that on some occasions the CI informed him that certain individuals possessed narcotics and, at the time Det. Rice approached these individuals, there were no drugs found on their persons. Det. Rice said, in his opinion, it is not possible that the CI provided him incorrect information, but that by the time he searched the individuals they had disposed of the narcotics.

of a felony, had listed addresses in Illinois and at 1007 Selby Lane in St. Louis. Det. Rice drove past the 1007 Selby Lane residence and saw a vehicle registered to Belk there on various occasions. Det. Rice's investigation failed to uncover any 9-1-1 calls or citizen complaints regarding that residence.

     3.    On July 22, 2004, Det. Rice showed a photograph of Belk to the CI who confirmed that the "Pat" the CI had referenced was indeed Belk pictured in the photograph. The CI then told Rice that Belk still possessed weapons.

     4.    Later on July 22, 2004, Det. Rice applied for a search warrant to St. Louis Circuit Judge Mark Neal. In support of the application, Det. Rice submitted his sworn, written affidavit. In the affidavit Det. Rice stated that on July 19, 2004, he was contacted by a CI he had known for 10 years, whom he deemed reliable, and who had previously provided information leading to the disposition of cases in St. Louis Circuit Court. Rice stated that the CI said that he/she was inside the residence at 1007 Selby Lane and watched the subject clean his weapons, described as an AK-47 semi-automatic assault rifle and a Tec 9 semi-automatic assault pistol. After cleaning the weapons, the subject placed the loaded AK-47 behind the bushes in front of 1007 Selby Lane, in an effort "to bolster his reputation and make others fearful of him." The CI described the subject by race, age, height, weight, and known first name. Det. Rice stated that a police department computer check revealed Patrick Belk was a resident of 1007 Selby Lane and had criminal convictions for weapons violations and for domestic assault. Upon showing a photograph of Patrick Belk to the CI, he/she confirmed the suspect's identity as Belk. The affidavit further stated that, on July 22, 2004, the CI again contacted Rice and told him that the CI had been inside 1007 Selby Lane in the past 24 hours and saw that Belk still had the weapons. (Gov't Ex. 1, Affidavit.)

     5.    Based upon this affidavit, Judge Neal issued a search warrant for the residence located at 1007 Selby Lane, St. Louis, Missouri, to search for an AK-47 assault weapon, a Tec 9 semi-automatic weapon, and any other instruments of the crime of being a convicted felon in possession of a weapon. (Govt's Ex. 1, Search Warrant.)

6. After the search warrant was issued, on July 29, 2004, while in the area of 1007 Selby Lane on an unrelated matter, Det. Rice saw Belk in his vehicle. Rice then decided to execute the search warrant. He had uniformed Mobile Reserve officers in a marked police vehicle stop Belk's vehicle three blocks away from his residence. This was done pursuant to standard police procedure to detain the subject of a search warrant before executing the warrant, in an effort to prevent individuals from attempting to destroy evidence and for officer safety.

7. The uniformed officers stopped Belk's vehicle and Det. Rice, dressed in a police raid jacket, approached Belk and identified himself as an officer. Rice asked Belk for identification and Belk said he was Patrick Belk and lived in Illinois. Rice asked him whether he lived at 1007 Selby and Belk said he was unfamiliar with the 1007 Selby Lane address. Rice asked him whether he had a key to it and Belk said he did not. During this conversation, Det. Rice did not make any threats or promises to Belk, and Belk did not appear to be under the influence of drugs or alcohol or suffering from any mental health issues. A search of Belk's vehicle did not yield any contraband.

8. Det. Rice and other officers then went to 1007 Selby Lane and used a key from Belk's key ring to enter the residence. The officers immediately did a protective sweep of the residence for safety purposes and found no one in the residence. Thereafter, a more thorough search of the residence was made to execute the search warrant. In the search, officers located and seized the following items: (1) multiple rounds and clips of ammunition; (2) a CDL permit; (3) AKS 7.62 rifle (AK-47 assault rifle); (4) 2 bags "weed"; (5) 2 pipes; and (6) scale.

9. Thereafter, Belk was formally arrested and read his constitutional rights to remain silent and to counsel. Belk was not questioned and he made no statement at that time.

10. Belk was then transported to the police station where he was booked and asked biographical questions. During booking, Belk provided the same answers as when he was stopped.

11. On January 27, 2005, the instant indictment was returned against Belk and a federal arrest warrant was issued. On February 2, Det. Rice and other officers went to the 1007 Selby Lane residence to arrest

Belk on the warrant. The officers were dressed in jackets identifying them as law enforcement. The officers approached the residence from the front, rang the doorbell, and knocked on the front door. Det. Rice saw Belk and another individual through the window. When he saw Belk run up the stairs, the officers forcibly entered the residence out of concern that, based on the knowledge of weapons in the house, Belk may be attempting to flee or arm himself.

     12. After entering, the officers went upstairs and confronted Belk who was coming out of the bathroom. The officers subdued Belk with a stun gun. He was taken into custody and handcuffed without further resistance.

     13. Det. Rice saw that Belk's hands were wet. Det. Rice entered and made a protective sweep of the bathroom. Other officers engaged in a protective sweep of other portions of the residence. In doing so, Det. Rice saw that the top of the toilet tank was off and laying in the bathtub. Det. Rice looked into the tank and saw a small, loaded semi-automatic pistol, which he seized.

     14. Thereafter, Belk was advised of his rights and he made no statements.

## **DISCUSSION**

Defendant Belk argues that there was no probable cause for the search warrant, as Det. Rice made no real effort to corroborate the information supplied by the CI. Accordingly, he argues, any evidence derived thereof is "fruit of the poisonous tree" and should be suppressed.

**A. Search Warrant**

The issue before this court when reviewing the legal sufficiency of the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause existed. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

"Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999) (quoting United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995)).  Such a determination is to be based upon "the totality of the circumstances." Gates, 462 U.S. at 238.  In other words, the task of the issuing judge is to make "a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (internal quotations omitted); United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003), cert. denied, 541 U.S. 1055, 1080 (2004).

"'The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable . . . Information may be sufficiently reliable . . . if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'" United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)).

An informant's reliability, veracity, and basis of knowledge are relevant considerations--but not independent, essential elements--in finding probable cause. United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994), cert. denied, 514 U.S. 1090 (1995); see also Gates, 462 U.S. at 237-39 (rejecting the rigid two-pronged test for determining whether information from an anonymous informant satisfies the probable-cause standard and reaffirming the totality-of-the-circumstances analysis).

The undersigned concludes that the issuing judge had a substantial basis, based on the totality of circumstances, for concluding that probable cause existed for issuing the warrant.  The affidavit in support of the warrant details facts showing that a CI with whom Det. Rice had a 10 year history provided information that an individual

possessed weapons. The CI had proven reliable many times, and his or her information had led to numerous criminal case dispositions. Engaging in an independent investigation, Det. Rice determined that Belk at some point had resided at the address given by the CI and appeared to fit the CI's description. The CI then confirmed based on a photograph that Belk was indeed the individual he or she was referring to. Moreover, Det. Rice learned that Belk was a convicted felon.

The undersigned is constrained to consider only the existing affidavit in support of the search warrant, and may not consider any extraneous evidence supporting or detracting from whether probable cause existed to issue the warrant. Accordingly, the fact that Det. Rice did not engage in extended surveillance or attempt to locate Belk at an Illinois residence, as defendant argues, is of no concern when analyzing the issue at hand.

Given the totality of the circumstances scribed within the four corners of the affidavit, there was probable cause for the issuing judge to conclude that weapons may be found at the 1007 Selby Lane residence, and that Belk resided at that location. Therefore, the items seized during the execution of the search warrant should not be suppressed. See United States v. Fellers, 397 F.3d 1090, 1094-95 (8th Cir. 2005) (discussing exclusionary rule); United States v. Hessman, 369 F.3d 1016, 1021-22 (8th Cir. 2004) (same), cert. denied, 125 S. Ct. 917 (2005).

**B. Stop of Belk's Vehicle**

Police do not violate the Fourth Amendment by stopping a motor vehicle when they have reasonable suspicion, based on specific and articulable facts, that a driver or passenger is involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 25-31 (1968); United States v. Robinson, 119 F.3d 663, 666 (8th Cir. 1997) (quoting United States v. Sokolow, 490 U.S. 1, 7-8, 109 (1989).

In United States v. Henderson, the police obtained a warrant based on information received from confidential informants, surveyed Henderson's residence, and stopped Henderson's vehicle 2-3 miles away from his residence in order to obtain his cooperation in executing the search warrant. Henderson, 645 F.2d 627, 628 (8th Cir.), cert. denied,

454 U.S. 829 (1981). The court held the stop comported with the Fourth Amendment, because the police had information Henderson was conducting drug activities based on the warrant affidavit, the stop was a minimal intrusion, and the officer's plan to request Henderson's assistance when executing the warrant was reasonable. Id.

Similar to Henderson, the police discovered Belk driving his vehicle and stopped him to notify him of the search warrant and to request his presence when conducting the search. At that moment, the officers were well within their rights to ask Belk certain biographical questions and search the vehicle for a possible weapon, as the basis for the warrant was the possession of weapons. Terry, 392 U.S. at 24; United States v. Shranklen, 315 F.3d 959, 961 (8th Cir.) ("[O]fficers may take steps reasonably necessary to protect their personal safety."), cert. denied, 538 U.S. 971 (2003).

Moreover, any answers Belk gave in response to the officer's questioning during the stop of his vehicle should not be suppressed. Miranda v. Arizona requires a person be advised of his right to counsel and to be free from compelled self-incrimination, prior to any custodial interrogation. Miranda, 384 U.S. 436, 444 (1966). After advising the subject of his Miranda rights, the police may question a person who has made a voluntary, knowing, and intelligent waiver of his rights. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986).

Routine biographical information is not covered by the requirements of Miranda. United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) (citing Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990)); United States v. Horton, 873 F.2d 180, 181 n.2 (8th Cir. 1989); United States v. McLaughlin, 777 F.2d 388, 391-92 (8th Cir. 1985).

Accordingly, the stop of Belk's vehicle, subsequent questioning, and search of the vehicle were each lawful and any evidence obtained should not be suppressed.

**C.   Search of the Residence**

Turning to the execution of the search warrant, the undersigned concludes that the warrant was validly executed. "A lawful search extends to all areas and containers in which the object of the search

may be found." United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997). The officers executing a search warrant must do so in a reasonable manner. Hummel-Jones v. Strope, 25 F.3d 647, 651 (8th Cir. 1994). Under the plain view doctrine, "officers may seize an item [outside the scope of the warrant] if they have a lawful right of access to the item seized and the object's incriminating nature is immediately apparent." United States v. Nichols, 344 F.3d 793, 799 (8th Cir. 2003); see United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (items are immediately apparent if the officer has probable cause to associate them with criminal activity), cert. denied, 516 U.S. 1150 (1996).

In this case, the facts show that the officers engaged first in a protective sweep to ensure there were no other individuals in the residence that could pose a safety concern. Given the officers were there to search for weapons, a sweep was warranted, under the circumstances, to ensure officer safety. See Maryland v. Buie, 494 U.S. 325, 327 (1990). Furthermore, the record does not indicate that the search was conducted in an unreasonable manner, or that the officers searched in places where the sought after weapons were not likely to be found.

While the officers did seize non-weapon items (i.e., marijuana, pipe, scale), officers otherwise lawfully in a location may seize evidence without a warrant if its incriminating nature is immediately apparent. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003), cert. denied, 541 U.S. 968 (2004). Clearly, the incriminating nature of marijuana is immediately apparent and, to a trained police officer, arguably so too are a scale and pipes as potentially indicative of narcotics activity.

There being no facts or circumstances before the undersigned evidencing the search was executed in an unreasonable manner or otherwise improper, any and all evidence seized as a result of executing the search warrant and listed on the "Return and Inventory" (Govt's Ex. 1 at unnumbered 5) should not be suppressed.

Turning to Belk's arrest, the undersigned finds he was lawfully arrested. Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe

that the defendant had committed an offense or was then committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir.), cert. denied, 513 U.S. 1048 (1994); United States v. Williams, 897 F.2d 1430, 1435 (8th Cir. 1990). This determination does not depend on individual facts, but depends on the cumulative effect of the facts in the totality of the circumstances. United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995). Having the information provided by the CI before the search and after finding weapons in the residence of the previously convicted Belk, the officers clearly had probable cause to arrest Belk at the residence.

Any statements Belk made subsequent to his arrest were similarly lawful and should not be suppressed. Belk was informed of his rights when he was arrested. Accordingly, any statements he gave after transport to the police station were given with full awareness of his rights to remain silent and consult with an attorney. There are no facts and circumstances to suggest Belk's waiver of rights was coerced or in any way involuntary. Moreover, Miranda warnings are not generally a condition precedent to routine booking questions. See Brown, 101 F.3d at 1274.

Therefore, Belk's arrest was lawful and any statements he made after the arrest were a product of a knowing and voluntary waiver of his rights and should not be suppressed.

**D.  Arrest Warrant and Subsequent Arrest**

A valid arrest warrant for a suspect, plus a reasonable belief that the suspect resides in a particular place and that he is presently there, authorize entry into the suspect's residence to effect the arrest, whether he lives there alone or with someone else. Payton v. New York, 445 U.S. 573, 603 (1980); Steagald v. United States, 451 U.S. 204, 221 (1981); United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996); Washington v. Simpson, 806 F.2d 192, 196 (8th Cir. 1986). The officers need not be correct in believing that the suspect is present there when they enter, but only have a reasonable basis for believing that he is there. Risse, 83 F.3d at 216; cf. United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997).

In this case, the officers, armed with a valid arrest warrant, had sufficient information to believe that Belk resided at and would be found at 1007 Selby Lane. Despite Belk's protestations to the contrary, he had a key for the residence, the police database showed he was connected to the address, and the CI said that Belk lived at the residence.

Assuming, *arguendo*, that the house was not Belk's residence, officers still had the right to arrest him in the house. Generally, officers may not enter the residence of a third party to effect an arrest warrant without a search warrant for the premises, absent consent or exigent circumstances. Risse, 83 F.3d at 215; United States v. Davis, 288 F.3d 359, 362 (8th Cir.), cert. denied, 537 U.S. 822 (2002). In this instance, Belk's immediate flight upstairs upon seeing the officers constitutes "exigent circumstances" necessary for officers to enter the residence without a search warrant to prevent his immediate escape. See United States v. Clement, 854 F.2d 1116, 1119 (8th Cir. 1988). Belk's actions further provided the officers the authority to enter by force as, after seeing Belk through the window, they undoubtedly knew he was present at the residence and had reason to fear his escape or destruction of evidence.

Moreover, after placing Belk into custody, officers had the authority to engage in a protective sweep of the residence, having information that Belk possessed weapons, having witnessed Belk's flight upstairs upon seeing the officers, and having no indication of how many additional individuals may be on the premises. Buie, 494 U.S. at 327 ("Officers may conduct a 'protective sweep' of the premises incident to a lawful arrest."); Terry, 392 U.S. at 24; United States v. Cash, 378 F.3d 745, 747-49 (8th Cir. 2004), cert. denied, 125 S. Ct. 1727 (2005); United States v. Thompson, 906 F.2d 1292, 1297-98 (8th Cir.), cert. denied, 498 U.S. 989 (1990).

In conducting the protective sweep, and as a lawful search incident to arrest, Det. Rice committed no constitutional violation when he entered the bathroom Belk exited just prior to being taken into custody. As Det. Rice testified, the toilet box was open, therefore, the weapon inside the tank was in plain view. Knowing that Belk was a convicted felon, the incriminating nature of the weapon in his residence would have been readily apparent. See Nichols, 344 F.3d at 799; Hatten, 68 F.3d at 261.

Accordingly, the officers lawfully effected the arrest warrant and any evidence obtained thereof should not be suppressed. [3]

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence and statements (Docs. 15, 32) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing July 11, 2005, at 9:30 a.m.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 25, 2005.

---

[3]At the time of hearing, Belk had not been charged related to this evidence. The United States proffered the intent to potentially introduce these facts as evidence under Fed. R. Evid. 404(b). Accordingly, it is discussed within the context of this Recommendation.